UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| UNITED STATES OF AMERICA, | Case No. 15-CR-0162 (PJS/SER) |
|---|---|
| Plaintiff, | Case No. 18-CV-1390 (PJS) |
| v. | ORDER |
| RYAN DIMITRI BROOKS, SR., | |
| Defendant. | |

LeeAnn K. Bell, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Ryan D. Brooks, Sr., pro se.

Defendant Ryan Brooks pleaded guilty to being a felon in possession of a firearm and was sentenced to 95 months' imprisonment. The United States Court of Appeals for the Eighth Circuit affirmed Brooks's sentence on direct appeal. *United States v. Brooks*, 681 F. App'x 566 (8th Cir. 2017).

This matter is before the Court on Brooks's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Brooks has also filed a motion to supplement his § 2255 motion and two motions demanding production of evidence that he believes is relevant to his § 2255 motion. For the reasons that follow, Brooks's motion to supplement is granted, the (supplemented) § 2255 motion is denied, and the two motions seeking production of evidence are denied. Because the record conclusively

demonstrates that Brooks is not entitled to relief, no hearing is necessary. 28 U.S.C. § 2255(b); *Noe v. United States*, 601 F.3d 784, 792 (8th Cir. 2010).

I. BACKGROUND

Brooks, his grandmother, his mother, and his girlfriend were involved in a family drug-distribution operation. According to the government, the center of the operation was a pizza restaurant owned by Brooks, through which the family allegedly laundered the proceeds of their drug dealing.

In November 2014, law enforcement received a tip about drug deliveries that were being made to Brooks's restaurant and to his grandmother's house. ECF No. 33 at ¶ 7. Between August 2012 and October 2013, four different marijuana deliveries were intercepted on their way to one of those two locations. *Id.* A search warrant was executed on a fifth package set to be delivered to Brooks's grandmother's house on November 20, 2014. *Id.* A search of that package revealed over five pounds of marijuana. *Id.*

In the aftermath of this discovery, additional search warrants were obtained for four Brooks family properties. *Id.* at ¶ 9. Police discovered two guns and distribution quantities of drugs, along with much other evidence of drug dealing. *Id.* at ¶¶ 10-12. Brooks, his grandmother, his mother, and his girlfriend were arrested, and all of them

ultimately pleaded guilty to (or were found guilty of) various state and federal crimes. *See* ECF No. 26; ECF No. 78-1; ECF No. 78-2; ECF No. 78-3.

Brooks was the first to plead guilty. After being charged with an array of crimes in state and federal court, Brooks pleaded guilty in federal court on August 26, 2015 to one count of being a felon in possession of a firearm. ECF No. 26. Pursuant to Brooks's plea agreement, the federal government agreed that it would move to dismiss a second count of being a felon in possession of a firearm. ECF No. 26 at 1. The plea agreement did not say a word about the pending state charges against Brooks and his family members. *See* ECF No. 26. The plea agreement also affirmatively represented that "[t]his is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings." ECF No. 26 at 7. And at his change-of-plea hearing, Brooks testified under oath that the government had not made any promises to him that were not described in the plea agreement. ECF No. 56 at 19.

Shortly after Brooks entered his guilty plea in federal court, his grandmother, mother, and girlfriend all pleaded guilty to (or were found guilty of) various crimes in state court. Brooks's grandmother pleaded guilty in August 2015 to fifth-degree possession, Brooks's girlfriend pleaded guilty in September 2015 to first-degree

possession, and Brooks's mother was convicted in October 2015[1] of engaging in the business of concealing criminal proceeds. ECF No. 78-1; ECF No. 78-2; ECF No. 78-3. By the end of 2015, Brooks's grandmother, mother, and girlfriend had all been sentenced. *Id.*

Brooks was sentenced on his federal conviction on April 8, 2016. ECF No. 47. In calculating Brooks's range under the United States Sentencing Guidelines, the Court applied two enhancements that are relevant to Brooks's § 2255 motion. First, the Court found that Brooks's base offense level was increased to 24 because he had two prior felony convictions of a "crime of violence"—specifically, convictions of second-degree assault and third-degree assault under Minnesota law. *See* U.S.S.G. §§ 4B1.1, 4B1.2(a)(1); ECF No. 41 at 9; ECF No. 33 at ¶ 25. Second, the Court applied a four-level enhancement because Brooks had possessed the weapon in connection with another felony—specifically, possessing marijuana with intent to distribute. *See* U.S.S.G. § 2K2.1(b)(6)(B); ECF No. 33 at ¶ 28. The parties had stipulated to this latter enhancement. ECF No. 26 at ¶ 5(b). Brooks was also given a three-point reduction for

---

[1]The government asserts that Brooks's mother was convicted on October 30, 2015. *See* ECF No. 78 at 2; *see also* ECF No. 76 at 5. But the government's exhibits seem to suggest that Brooks's mother was actually found guilty after a jury trial on August 20, 2015—before Brooks pleaded guilty. *See* ECF No. 78-1 at 2-3. The Court need not resolve the matter, however, as it is not relevant given the Court's disposition of Brooks's § 2255 motion.

acceptance of responsibility, resulting in a total offense level of 25.  ECF No. 26 at ¶ 5(c); ECF No. 57 at 5.

The Court calculated Brooks's criminal-history category as VI and his Guidelines range as 110 to 120 months.  (The range was capped at 120 months by the statutory maximum.)  ECF No. 57 at 5.  The Court granted a downward variance and sentenced Brooks to 95 months' imprisonment.  ECF No. 57 at 13.  Shortly after Brooks's sentencing in federal court, the state charges against Brooks were dismissed.  ECF No. 76 at 4.

Brooks appealed his 95-month sentence, arguing that it "was unreasonable and greater than necessary to accomplish the goals of federal sentencing."  Brief of Appellant at i , *United States v. Brooks*, 681 F. App'x 566 (8th Cir. 2017) (No. 16-1982).  Brooks did not challenge any of the Court's Guidelines calculations or other rulings.  The Eighth Circuit rejected Brooks's argument and affirmed his sentence.  *United States v. Brooks*, 681 F. App'x 566 (8th Cir. 2017).

Brooks then filed a § 2255 petition.  In his original petition, Brooks argued only that he was denied effective assistance of counsel when his lawyer failed to argue that his prior second-degree assault conviction was not a "crime of violence" and thus should not have been used to increase his base offense level.  ECF No. 69.  Brooks later filed a motion to supplement his § 2255 petition—a motion to which the government

has not objected—in order to argue that his lawyer was ineffective in connection with the four-level enhancement that he received under § 2K2.1(b)(6)(B) for possessing a weapon in connection with another felony. ECF No. 70. Brooks argues that he stipulated to the § 2K2.1(b)(6)(B) enhancement only because the federal government made a secret promise that the State of Minnesota would not to pursue criminal charges against his grandmother, mother, and girlfriend—and that his attorney was ineffective in entering or failing to enforce that deal. Alternatively, Brooks argues that his attorney erred in advising him that application of the § 2K2.1(b)(6)(B) enhancement was a foregone conclusion, when, in fact, it was unlikely that the government could have established that the enhancement applied. Brooks alleges that, had he been properly advised, and had he known that the government would not abide by its secret promise, Brooks would not have "forf[ei]ted a Factual hearing" by stipulating to the § 2K2.1(b)(6)(B) enhancement; instead, he would have "insisted in having the Government[']s evidence." ECF No. 70 at 2, 5.

## II. ANALYSIS

### *A. Standard of Review*

To establish ineffective assistance of counsel in connection with plea negotiations, Brooks must satisfy the familiar two-part *Strickland* standard, establishing both deficient performance and prejudice. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985);

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). That is, Brooks must show both that his "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.* at 697.

### B. Ground One

In his original § 2255 motion, Brooks alleged that his attorney was ineffective for failing to argue that his prior Minnesota second-degree assault conviction was not a "crime of violence." ECF No. 69 at 2-6; U.S.S.G. §§ 2K2.1(a)(2), (3)(B). The Court can make quick work of Brooks's argument. Under Eighth Circuit precedents, it is clear that a conviction for second-degree assault under Minnesota law is a "crime of violence" for purposes of the United States Sentencing Guidelines. *See United States v. Headbird*, 832 F.3d 844, 846-47 (8th Cir. 2016) (holding that second-degree assault under Minn. Stat. § 609.222 is a violent felony under the Armed Career Criminal Act ("ACCA")); *United States v. Lindsey*, 827 F.3d 733, 740 (8th Cir. 2016) (same); *see also United States v. Boose*, 739 F.3d 1185, 1187 n.1 (8th Cir. 2014) ("Based on their nearly

identical definitions, we construe 'violent felony' under 18 U.S.C. § 924(e)(2)(B)(ii) (the Armed Career Criminal Act) and 'crime of violence' under the Guidelines as interchangeable . . . .").[2]

Brooks's argument to the contrary is largely based on a misunderstanding of the Eighth Circuit's decision in *Headbird*. *Headbird* addressed the issue of whether a juvenile adjudication for second-degree assault is a predicate conviction under the ACCA. 832 F.3d at 846. For an *adult conviction* to qualify as a predicate conviction under the ACCA, that conviction must be for a "violent felony." 18 U.S.C. § 924(e)(1). But for a *juvenile adjudication* to qualify as a predicate conviction under the ACCA, that adjudication must not only be for "a violent felony," but *also* "involv[e] the use or carrying of a firearm, knife, or destructive device." 18 U.S.C. § 924(e)(2)(B). In *Headbird*, the Eighth Circuit held that an adult conviction of second-degree assault under Minnesota law is an ACCA predicate because it is a "violent felony," 832 F.3d at 846-47, but that a juvenile adjudication of second-degree assault under Minnesota law is not an ACCA predicate because, although it is a "violent felony," it does not necessarily "involve the use or carrying of a firearm, knife, or destructive device," *id.* at 847-49. Brooks has an adult conviction (not a juvenile adjudication) for second-degree assault—and thus, as

---

[2]A conviction for third-degree assault under Minnesota law—Brooks's other predicate offense—is also clearly a "crime of violence." *See United States v. Wadena*, 895 F.3d 1075, 1076 (8th Cir. 2018).

*Headbird* itself makes clear, Brooks's conviction is a predicate under the ACCA and the Sentencing Guidelines.

Because Brooks's conviction for second-degree assault is clearly a "crime of violence" for purposes of the Sentencing Guidelines, Brooks's attorney was not ineffective for failing to argue otherwise.

### C. Ground Two

At sentencing, Brooks and the government stipulated to application of a four-level enhancement under § 2K2.1(b)(6)(B) because Brooks possessed the weapon in connection with another felony. ECF No. 26 at ¶ 5(b). Brooks argues that, had he received effective assistance of counsel, he would not have entered into this stipulation, but instead would have forced the government to introduce evidence to prove that the enhancement applied.

Brooks cites two alleged failures of his attorney:

First, Brooks argues that his attorney erred in advising him that the Court was certain to apply the § 2K2.1(b)(6)(B) enhancement, given that the firearm was "found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1, n.14(B). In fact, says Brooks, because he committed only a drug-*possession* offense, the § 2K2.1(b)(6)(B) enhancement could not have been applied unless

the government proved that his possession of the firearm "facilitated, or had the potential of facilitating" his possession of drugs. U.S.S.G. § 2K2.1, n.14(A).

Second, Brooks argues that he entered into a secret deal with the government, under which Brooks agreed to stipulate to the application of the § 2K2.1(b)(6)(B) enhancement, and in return the government promised that the state charges against Brooks and his family members would be dropped. Brooks contends that his lawyer was ineffective either for agreeing to this secret deal or for not enforcing the government's promise.

The Court was prepared to reject this second argument out of hand. As noted, the plea agreement recited that "[t]his is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings." ECF No. 26 at 7. The plea agreement said nothing whatsoever about any agreement regarding the pending state charges against Brooks and his family members. Moreover, at the change-of-plea hearing, Brooks testified under oath that the government had *not* made any other promises to him:

> Q. . . . Other than what is in this plea agreement, has the government or has anyone else made any promises to you in order to get you to plead guilty here today?
>
> A. No, sir.

ECF No. 56 at 19.

To the dismay of the Court, however, the government now admits that it *did* have an undisclosed side deal with Brooks—and thus admits that (1) the government signed a plea agreement containing a misrepresentation and (2) the government stood by silently as Brooks committed perjury at the change-of-plea hearing. The government insists, however, that its undisclosed side deal with Brooks was that the state charges against *him* would be dismissed, not that the state charges against his *family* would be dismissed. ECF No. 78 at 7-8. Of course, one reason why the government and a defendant should not enter into undisclosed side deals is that it leads to precisely this type of dispute.[3]

The government contends that Brooks's characterization of the undisclosed side deal is not believable because Brooks was sentenced after his grandmother, mother, and girlfriend had been convicted and sentenced in state court, and yet Brooks said not a word about the government's broken promise in his sentencing papers or at the sentencing hearing. ECF No. 78 at 8-9. The government's argument ignores the fact

---

[3]The government argues that it could not possibly have made the promise alleged by Brooks. According to the government, Brooks alleges that he was promised that state charges would not be *brought* against his family—a promise that the government could not have made to Brooks at the time that he entered into the plea agreement because his family members had already been charged in state court. ECF No. 78 at 8. But it is clear that Brooks is alleging—albeit somewhat inarticulately—that the government promised him that the state charges against his family members would *go away*. *See, e.g.*, ECF No. 70 at 5 ("[i]t was promised to [me] that [my] family would not be prosecuted if [I] pleaded Guilty to the four level enhancement").

-11-

that Brooks also claims that, because of allegedly erroneous advice that he received from his attorney, he believed that the Court would apply the enhancement under § 2K2.1(b)(6)(B) whether or not he stipulated to it. Thus, under Brooks's version of events, he had nothing to gain by bringing the government's broken promise to the Court's attention. Now, after he has done some research, Brooks has come to believe that the enhancement may *not* have been applied if he had not stipulated to it, and thus that he *may* have been prejudiced by the government's broken promise. For purposes of ruling on Brooks's motion, then, the Court must assume that the government made and broke the promise described by Brooks. The Court will also assume for the sake of argument that Brooks's attorney acted ineffectively when she facilitated or failed to take steps to enforce that broken promise.

It is important to be clear about how Brooks claims that he was prejudiced by the two alleged errors of his attorney. Brooks does not claim that, had he been properly advised, and had he known that the charges against his family members would not be dropped, he would not have *pleaded guilty*. Instead, he consistently claims that, had he been properly advised, and had he known that the charges against his family members would not be dropped, he would not have *stipulated to the § 2K2.1(b)(6)(B) enhancement*. Brooks thus identifies the prejudice that he suffered as a result of his attorney's alleged errors as the denial of "a factual hearing" at which "the Government [would have had]

-12-

to prove" that the § 2K2.1(b)(6)(B) enhancement applied. ECF No. 70 at 4. But for his attorney's alleged errors, Brooks argues, "he would . . . [have] insisted in having the Government[']s evidence as far as the Four level increase [under § 2K2.1(b)(6)(B)]." *Id.* at 5; *see also id.* at 4 (stating that Brooks "was prejudiced by having a four level offense increase" applied); ECF No. 80 at 5 (stating that the prejudice that Brooks suffered is that he "waived his right for the government to prove the [§ 2K2.1(b)(6)(B)] enhancement applied"); ECF No. 81 at 3 (stating that the prejudice that Brooks suffered is that "[h]e could have made an objection to the gun not being in close proximity under 2K2.1(b)(6)(B)"); *id.* at 4 (stating that the prejudice that Brooks suffered is that he "gave up his right to challenge the upward enhancement under 2K2.1(b)(6)(B)").[4]

---

[4]At the very end of Brooks's reply memorandum appears a somewhat ambiguous sentence asserting that "but for counsel's erroneous advice, (i.e. the promise to forego his and his families [sic] state case in exchange for the four (4) level enhancement), he would have rejected the guilty plea, because his plea colloquy and surrounding circumstances show's [sic] that the promise and the four (4) level enhancement was [sic] the determinative issue in his decision to accept the plea . . . ." ECF No. 80 at 5. Brooks then proceeds to request the Court to "allow Brooks to plea anew." *Id.* at 6. By "plead anew," Brooks clearly means "plead guilty without having to stipulate to application of the § 2K2.1(b)(6)(B) enhancement."

      The Court interprets the ambiguous sentence to be consistent with the rest of Brooks's filings. Brooks has never contested his guilt nor contended that his decision to *plead guilty* was the result of his attorney's errors. Rather, he has repeatedly contended that his decision to *stipulate to the § 2K2.1(b)(6)(B) enhancement* was the result of his attorney's errors. Thus, when Brooks refers to rejecting "the guilty plea" and to his decision to accept the "plea," he is referring to the plea *agreement*—and, in particular, to the provision in the agreement whereby he stipulates to application of the
(continued...)

Turning to the merits of Brooks's arguments:

Section 2K2.1(b)(6)(B) provides a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense." "[D]ifferent rules govern the application of U.S.S.G. § 2K2.1(b)(6) depending on whether the underlying felony is for drug trafficking or for drug possession." *United States v. Mansfield*, 560 F.3d 885, 887 (8th Cir. 2009). "If the felony is for drug trafficking, Application Note 14(B) mandates application of the adjustment if guns and drugs are in the same location." *United States v. Blankenship*, 552 F.3d 703, 705 (8th Cir. 2009). But "[i]f the underlying drug offense is for simple possession, the district court may still apply the adjustment, but only after making a finding that the firearm facilitated the drug offense." *Id.*

Brooks argues that his underlying offense was drug possession, not drug trafficking, and thus the Court could not have applied the § 2K2.1(b)(6)(B) enhancement unless the government first proved that Brooks's possession of a gun in his home facilitated his possession of drugs in the same home. Had Brooks been advised of this fact—and had he known that the state charges against his family would not be dropped—Brooks says that he would not have stipulated to application of the § 2K2.1(b)(6)(B) enhancement. Brooks does not argue that it would have been

---

⁴(...continued)
§ 2K2.1(b)(6)(B) enhancement.

-14-

impossible for the government to establish that his possession of the gun facilitated his possession of the drugs, but he suggests that the government would have had a hard time of it. In support of that suggestion, Brooks cites *United States v. Walker*, 900 F.3d 995 (8th Cir. 2018), and *United States v. Mansfield*, 560 F.3d 885 (8th Cir. 2009).

The problem for Brooks is that his premise is incorrect: Brooks's underlying offense was not simple drug possession, but drug trafficking. In his plea agreement, Brooks stipulated that he had committed the offense of "possession with intent to distribute marijuana." ECF No. 26 at ¶ 5(b). At his change-of-plea hearing, Brooks testified under oath that he had read the plea agreement and that his attorney had "gone through it carefully and explained all the terms to [him]." ECF No. 56 at 14. Also at the change-of-plea hearing, the prosecutor reminded Brooks that "[t]he parties have agreed that four levels will be added to whatever the base offense level ultimately is because the possession of the firearms was in connection with another felony offense, specifically possession with intent to distribute marijuana." ECF No. 56 at 15. Brooks confirmed that he understood that fact. ECF No. 56 at 17. In his sentencing position, Brooks again explicitly "admitted that the firearm was found on a shelf inside the closet and was possessed in connection to *selling* marijuana." ECF No. 41 at 1 (emphasis added).

Brooks's multiple admissions that he was engaged in drug *trafficking*—not just drug *possession*—were supported by ample evidence in the record. Brooks was arrested after the government discovered multiple drug deliveries to his pizza restaurant and to the home of his grandmother—deliveries that involved a total of 42.04 pounds of marijuana. ECF No. 33 at ¶ 7.[5] The government's investigation discovered other evidence of distribution, including (but not limited to) unusually large cash deposits by Brooks's restaurant and by his grandmother and an unusual number of out-of-state trips by Brooks. *Id.* at ¶¶ 6-8. Most importantly, the search of Brooks's home turned up not only the handgun that Brooks pleaded guilty to possessing, but 409.5 grams of marijuana, 27.9 grams of cocaine, seven vials labeled "anabolics" and "testosterone," $7,000 in cash, two digital scales, drug-packaging materials, paperwork regarding wire transfers, bank-deposit slips, and an iPhone. *Id.* at ¶ 10.[6] A search of the iPhone

---

[5]At sentencing, Brooks objected to the inclusion of ¶¶ 6, 7, 8 and 12 in his presentence investigation report ("PSR") on the grounds that those paragraphs were "not relevant to the instant case," given that ¶ 10 (to which Brooks did not object) establishes that "drug paraphernalia, cash and photographs were found in the same home as the firearm." ECF No. 41 at 2. The Court overruled the objection. ECF No. 57 at 4. Brooks did not object to the factual accuracy of any of the assertions in his PSR, save for the assertion in ¶ 6 that he had admitted to a corrections officer that he had used his pizza restaurant to launder money and his pizza boxes to deliver marijuana. ECF No. 41 at 2. The Court found that, because the matter would not affect sentencing, a ruling on Brooks's objection to ¶ 6 was not necessary. ECF No. 57 at 4-5.

[6]Brooks argues that there is no "factual evidence . . . included in the record" regarding the items seized during the search of his home. ECF No. 80 at 4. Brooks is
(continued...)

revealed photographs of large amounts of marijuana; a photo of a UPS receipt for delivery of a package to Brooks's home; and texts between Brooks and the owner of the iPhone discussing drug transactions, package deliveries, and bank deposits. *Id.*

This case is nothing like the "mere possession" cases on which Brooks relies. In *Walker*, the defendant was arrested while driving a vehicle; a shotgun was found in the trunk, and "a small amount of crack cocaine"—an amount that the government conceded "was only a user amount"—was found on the floorboard of the passenger compartment. 900 F.3d at 996. In *Mansfield*, about two dozen individual packets of heroin (that the defendant "steadfastly maintained . . . [were] for personal use," 560 F.3d at 888) were found inside of a toilet on the main floor of the defendant's house, and a handgun was found in a locked trunk in the house's basement. *Id.* at 886. Here, by contrast, the search of Brooks's home turned up multiple hallmarks of drug trafficking, such as distribution quantities of drugs, digital scales, drug-packaging materials, a large

---

⁶(...continued)
incorrect. Paragraph 10 of Brooks's PSR identifies those items, and Brooks made no objection to ¶ 10; indeed, Brooks argued that the inclusion of ¶ 10 in the PSR made other paragraphs irrelevant because ¶ 10 so clearly established that he was involved in drug trafficking. ECF No. 41 at 2. Consequently, there is indeed "factual evidence . . . included in the record" regarding the items seized from Brooks's home. *See United States v. Escobar*, 909 F.3d 228, 241 (8th Cir. 2018) ("'We rely on and accept as true the unobjected to facts in the PSR.'" (quoting *United States v. Betts*, 509 F.3d 441, 444 (8th Cir. 2007))); *United States v. Poor Bear*, 359 F.3d 1038, 1042 (8th Cir. 2004) ("The evidence that the district court could rely on in making a factual determination [as to a Guidelines enhancement] include[ ] the unobjected-to portions of the PSR . . . .").

amount of cash, texts regarding drug transactions, and financial documents. *See United States v. Espinoza*, 885 F.3d 516, 520 (8th Cir. 2018) ("... searches ... yielded distribution quantities of methamphetamine, firearms, ammunition, financial records, and other evidence of drug trafficking such as a digital scale, packaging materials, and razor blades."); *United States v. Angell*, 11 F.3d 806, 810 (8th Cir. 1993) ("The house contained more than 100 marijuana plants, along with growing equipment, scales, and packaging materials. There was no question . . . that the house was the site of a drug trafficking crime.").

In short, the evidence that Brooks was engaged in drug *trafficking*—and not just drug *possession*—was overwhelming.[7] There is no doubt that the § 2K2.1(b)(6)(B) enhancement applied to him, and no doubt that the Court would have applied that enhancement even if Brooks had not stipulated. Consequently, the advice that Brooks's attorney gave him about § 2K2.1(b)(6)(B) was correct (and, obviously, Brooks's attorney did not act ineffectively when she provided accurate legal advice). Moreover, even if Brooks's attorney acted ineffectively in connection with the alleged secret promise by the government to drop the state charges against Brooks's family, Brooks was not

---

[7]Contrary to Brooks's contentions, *see* ECF No. 70 at 2; ECF No. 80 at 4, it does not matter that he was never formally charged with, or convicted of, drug trafficking. As the Sentencing Guidelines make clear, the enhancement for possessing a gun in connection with another felony offense applies "regardless of whether a criminal charge was brought, or a conviction [was] obtained," on that other felony offense. *See* U.S.S.G. § 2K2.1 n.14(C).

prejudiced by his attorney's error. By his own account, the only thing that Brooks gave up in return for the government's secret promise was a stipulation that the § 2K2.1(b)(6)(B) enhancement applied. But the Court would have applied that enhancement even if Brooks had not stipulated, and thus Brooks's stipulation was meaningless. It did not prejudice him in any way.

For these reasons, the Court denies Brooks's § 2255 motion.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant Ryan Dimitri Brooks's motion to supplement his motion under 28 U.S.C. § 2255 [ECF No. 70] is GRANTED.

2. Brooks's (supplemented) motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [ECF No. 68] is DENIED.

3. Brooks's motion to disclose material evidence [ECF No. 79] is DENIED AS MOOT.

4. Brooks's motion requesting information be released to him [ECF No. 81] is DENIED AS MOOT.

5. No certificate of appealability will issue.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 24, 2019   s/Patrick J. Schiltz
                        Patrick J. Schiltz
                        United States District Judge